WERDEGAR, J.,
Concurring and Dissenting.- — I agree with the majority that Pitchess* [1] discovery can be sought in administrative proceedings. I disagree, however, with the further conclusion that every nonjudicial presiding officer may review privileged and confidential materials in the context of such a motion.
As of the 1970s, when the Pitchess discovery scheme was enacted, the Legislature had never entrusted administrative hearing officers with reviewing allegedly privileged and confidential documents to determine their discover-ability. Only judicial officers were permitted to examine such documents. The disparity in authority was neither a relic of an older time nor an inadvertent oversight; as recently as 1968, the Legislature had taken the extraordinary step of creating a special statutory transfer mechanism to allow privilege disputes arising in administrative matters to be resolved by the only body authorized to conduct in camera review, a court.
The Pitchess discovery scheme continues this regime. At every turn, Evidence Code section 1045,[2] the statute governing in camera review of *649 confidential peace officer records, spells out what a “court” should do, eschewing the broader term “presiding officer” used elsewhere to identify those powers and duties shared by both judges and administrative hearing officers. Yet the majority concludes the Legislature in enacting the Pitchess discovery statutes not only intended the then unprecedented step of empowering administrative officers to conduct in camera privilege review, but took this step sub silentio, using each directive to “the court” to announce what a “court [or any other presiding officer]” should do. This cannot be what the Legislature intended.
The unfortunate consequence of the majority opinion is this; often, the person presiding over an administrative hearing need not be a lawyer and could be whomever the parties choose; the nonparty peace officer will have no input. On the say-so of such a person, without judicial oversight or any guarantee of a protective order, the peace officer’s formerly confidential records may be opened to inspection. Because the statutory scheme does not compel this regrettable result, I respectfully dissent.
I.
In 1965, the Legislature first codified in one place the rules of evidence. (Stats. 1965, ch. 299, p. 1297.) The new Evidence Code adopted largely verbatim the work of the California Law Revision Commission (Commission), which had been asked to study the possibility of conforming the state’s evidence rules to a set of nationally proposed uniform rules. (Stats. 1956, ch. 42, pp. 263, 265; see Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 3.)[3]
With respect to privilege issues, the commission recognized that questions of privilege might arise in a broad range of proceedings and sought to “remove the existing uncertainty concerning the right to claim a privilege in a nonjudicial proceeding.” (Cal. Law Revision Com. com., 29B pt. 3A West’s Ann. Evid. Code (2009 ed.) foll. § 910, p. 217.) The policy served by privileges would be seriously undermined if “[e]very officer with power to issue subpoenas for investigative purposes, every administrative agency, every local governing board, and many more persons could pry into the *650 protected information . . . .” (Id. at p. 216.) Accordingly, the Commission proposed, and the Legislature enacted, an explicit declaration that privilege protections would apply equally to judicial, administrative, and other proceedings. (§§ 901, 910.)
Equally important to protecting confidentiality, the new Evidence Code articulated procedures for how privilege claims would be resolved in nonjudicial proceedings. In general, “presiding officer[s],” broadly defined to include not only judicial officers but also arbitrators and anyone else overseeing a nonjudicial proceeding, could “determine a claim of privilege in any proceeding in the same manner as a court determines such a claim” under the Evidence Code. (§ 914, subd. (a); see § 905 [defining “ ‘Presiding officer’ ”]; Cal. Law Revision Com. com., 29B pt. 3A West’s Ann. Evid. Code, supra, foll. § 905, p. 215.) However, the authority to determine a claim of privilege was subject to two significant limits. First, only a “court,” not just any presiding officer, could “require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers . . . .” (§ 915, subd. (b).) The consequence of this was quite clear: the narrow authorization for in camera review “applies only when a court is ruling on the claim of privilege. Thus, in view of [section 915,] subdivision (a), disclosure of the information cannot be required, for example, in an administrative proceeding.” (Cal. Law Revision Com. com., 29B pt. 3A West’s Ann. Evid. Code, supra, foil. § 915, p. 256.) Nonjudicial in camera review remained forbidden. (See ibid, [the statute’s broad limits on in camera review “codif[y] existing law”].)[4]
Second, recognizing the risk of error inherent in having nonjudicial officers make privilege determinations, the commission and Legislature withheld the power to issue enforceable orders on privilege matters. Orders to disclose issued by such officers carried no risk of contempt for noncompliance. (§ 914, subd. (b).) Instead, parties seeking discovery needed a court order compelling disclosure. (Ibid.; see Assem. Com. on Judiciary com., reprinted at 29B pt. 3A West’s Ann. Evid. Code, supra, foll. § 914, p. 254 [“What is contemplated is that, if a claim of privilege is made in a nonjudicial proceeding and is overruled, application must be made to a court for an order compelling the witness to answer.”].) This detour to court was necessary “to protect persons claiming privileges in nonjudicial proceedings. Because such proceedings are often conducted by persons untrained in law, it is desirable to have a judicial determination of whether a person is required to disclose information claimed *651 to be privileged before he can be held in contempt for failing to disclose such information.” (Assem. Com. on Judiciary com., reprinted at 29B pt. 3A West’s Ann. Evid. Code, supra, foll. § 914, p. 254.)
In 1968, the Legislature codified procedures for discovery in proceedings under the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.). (Stats. 1968, ch. 808, § 3, p. 1561; Arnett v. Dal Cielo (1996) 14 Cal.4th 4, 21 [56 Cal.Rptr.2d 706, 923 P.2d 1].) As discussed, at the time all nonjudicial officers were prohibited from conducting in camera review of assertedly privileged documents. (§ 915.) Rather than lift this prohibition, the Legislature authorized the filing of a freestanding “verified petition to compel discovery in the superior court for the county in which the administrative hearing will be held, naming as [a] respondent the party” refusing to provide discovery. (Gov. Code, former § 11507.7, subd. (a), enacted by Stats. 1968, ch. 808, § 5, p. 1562.) Former section 11507.7 expressly granted a court the authority nonjudicial officers lacked: the power to review in camera the assertedly privileged administrative discovery materials under the rules set out in section 915 of the Evidence Code. (Gov. Code, former § 11507.7, subd. (d); Stats. 1968, ch. 808, § 5, pp. 1562, 1563.) Plainly, the Legislature took seriously the limits on the powers of nonjudicial officers.
This, then, was the landscape in 1978 when the Legislature enacted the Pitchess discovery statutes. Claims of privilege could be raised in judicial and nonjudicial settings alike. (§ 910.) Courts and nonjudicial presiding officers could rule on these claims. (§ 914, subd. (a).) Courts had authority to rule on claims of privilege following in camera review. (§ 915, subd. (b).) Presiding officers, other than court judges, did not; they were required to issue rulings without directly inspecting assertedly privileged materials. (Id., subd. (a); see § 905 [defining “ ‘Presiding officer’ ”].) Moreover, compliance with nonjudicial privilege rulings was not inherently compulsory. (§ 914, subd. (b).) Persons possessing assertedly privileged documents could not be required to allow nonjudicial officers to examine them and could not be forced to disclose them without review by an actual court.
The statutory scheme offered a path to resolution of any privilege dispute by the only entity entrusted to conduct in camera review and issue binding rulings — the court. If discovery was sought and refused on grounds of privilege in a proceeding covered by the APA, the party seeking discovery could file a petition in superior court under Government Code former section 11507.7 and have the court proceed with in camera review and a determination whether disclosure should be required. (See Gov. Code, former § 11507.7, subds. (d), (e); Stats. 1968, ch. 808, § 5, pp. 1562-1563.) In proceedings not covered by the APA, application to a court for an order compelling discovery was also necessary. In the absence of any more specifically applicable *652 statutory procedure, such as Government Code former section 11507.7, the Legislature directed parties to use “the procedure prescribed by Section 1991 of the Code of Civil Procedure” to obtain such an order. (§ 914, subd. (b); see Code Civ. Proc., § 1991 [granting superior courts jurisdiction to issue orders compelling discovery].)
II.
In Pitchess, supra, 11 Cal.3d 531, 535-540, we recognized a right to discovery of relevant peace officer records, subject only to a court’s balancing under section 1040 the interest in disclosure against the interest in confidentiality. The Legislature responded by creating a new statutory peace officer privilege. (Stats. 1978, ch. 630, § 5, p. 2083.) Henceforth, peace officer records were to be deemed confidential, and were to be discoverable solely to the extent authorized by newly enacted section 1043 et seq. (Pen. Code, § 832.7, subd. (a).)
Section 1043 explains how to obtain peace officer records discovery. (See generally Alford v. Superior Court (2003) 29 Cal.4th 1033, 1038-1039 [130 Cal.Rptr.2d 672, 63 P.3d 228]; City of Santa Cruz v. Municipal Court (1989) 49 Cal.3d 74, 82-83 [260 Cal.Rptr. 520, 776 P.2d 222].) The party seeking disclosure must file “a written motion with the appropriate court or administrative body.” (§ 1043, subd. (a).) Notice must be given to the custodian of records, who will notify the party whose records are sought. (Ibid.) The motion must be supported by evidence establishing “good cause” for discovery, including a showing that the evidence sought would be material and reason to believe the identified government agency has records of the type sought. (Id., subd. (b)(3).) A hearing is required absent waiver by the governmental agency with custody. (Id., subd. (c).)
Section 1045 further authorizes a “court” to determine relevance by examining records “in chambers in conformity with Section 915.” (§ 1045, subd. (b).) The “court” may exclude certain irrelevant and outdated matters (ibid.), “make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression” (id., subd. (d)), and issue protective orders (id., subd. (e)).
As an initial matter, the text plainly authorizes Pitchess discovery in nonjudicial proceedings. Section 1043, subdivision (a) expressly allows motions before “administrative bod[ies],” and we must give this language its natural and obvious meaning.
Nothing in the text of section 1043 or section 1045, however, relaxes the settled limits on the power of nonjudicial officers, who may neither compel disclosure in the face of privilege claims nor demand in camera disclosure. (See *653 §§ 914, subd. (b), 915, subd. (b).) Nor does anything suggest the Legislature was any less concerned about those limits here, or intended to make the new peace officer privilege less secure against nonjudicial abrogation than other existing privileges. Throughout section 1045, the Legislature uses the specific term “court,” not the broader term “presiding officer,” to identify who is authorized to conduct in camera review — a distinction that comports with what was then the firmly established practice. We should take the Legislature at its word.
Of note, the Legislature has been precise in its choice of terminology elsewhere in the Evidence Code and, indeed, in the very legislation at issue. (See §§ 905 [specially defining “ ‘Presiding officer’ ” to encompass all hearing officers, as distinct from judges or courts], 914 [making distinct and differential use of the terms “presiding officer” and “court”], 915 [same], 1043 [referring to a “court or administrative body” (italics added)].) We should not lightly presume the Legislature was any less precise in section 1045. If it had meant “presiding officer,” the term the majority’s interpretation effectively reads into the statute in place of “court,” it would have said so. (Cf. § 914, subd. (a) [using the term “presiding officer” to explicitly grant nonjudicial hearing officers authority to conduct privilege hearings under § 400 et seq.].) Indeed, the commentary to section 914 notes that express authorization for nonjudicial hearing officers to conduct privilege hearings was “necessary because Sections 40CM-06, by their terms, apply only to determinations by a court.” (Assem. Com. on Judiciary com., reprinted at 29B pt. 3A West’s Ann. Evid. Code, supra, foil. § 914, p. 254.) When the Legislature has written a statute to extend power only to a “court,” it knows that statute does not extend power to every nonjudicial “presiding officer.” And when the Legislature intends to extend new powers to nonjudicial officers, it knows how to do so expressly.
The legislative history supports the plain meaning of the text. The purpose of the new statutes was to “protect peace officer personnel records from discovery in civil or criminal proceedings” (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) as amended Apr. 3, 1978, p. 1) by creating a new privilege limiting their disclosure (id. at pp. 4-5). In committee report after committee report, assurances were offered that peace officers could not be forced to surrender this newly created privilege until a judge had reviewed materials in camera. (E.g., id. at pp. 3-5; Assem. Com. on Criminal Justice, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) as amended Aug. 7, 1978, p. 2; Assem. Com. on Criminal Justice, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Final Analysis, pp. 1-2.)[5] These guarantees mirror the recognition in connection with section 914 that only a *654 judicial determination could support compelled disclosure of privileged materials. (See Assem. Com. on Judiciary com., reprinted at 29B pt. 3A West’s Ann. Evid. Code, supra, foll. § 914, p. 254.)
That the Legislature knows how to authorize nonjudicial officers to conduct in camera review of privileged documents, and says so expressly when that is its intent, is further illustrated by how the Legislature later handled nonjudicial privilege review under the APA. In 1995, in response to recommendations from the Commission, the Legislature substantially updated and modernized the APA. (Stats. 1995, ch. 938, p. 7104; see Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd. (2006) 40 Cal.4th 1, 8-9 [50 Cal.Rptr.3d 585, 145 P.3d 462].) Among the proposed changes the Legislature enacted verbatim were revisions to the act’s discovery provisions. Whereas under then existing law, “discovery disputes between the parties [were] referred to the superior court for resolution and enforcement,” the Commission sought to “expedite the discovery process” by “vesting] resolution of discovery disputes in the administrative law judge.” (Recommendation: Administrative Adjudication by State Agencies (Jan. 1995) 25 Cal. Law Revision Com. Rep. (1995) pp. 55, 116.) Government Code section 11507.7 was revised to allow administrative law judges to do what previously only courts had done, including, with respect to privilege claims, authorizing for the first time an “administrative law judge [to] order lodged with it matters provided in subdivision (b) of Section 915 of the Evidence Code and examine the matters in accordance with its provisions.” (Gov. Code, § 11507.7, subd. (d).) This new authority eliminated any need for a transfer mechanism to bring every APA discovery dispute before a court; accordingly, the freestanding petition previously authorized by section 11507.7 was eliminated. (See Gov. Code, § 11507.7, subd. (a) [motion to compel may be filed directly with the administrative law judge].)
Curiously, the majority imputes to me the view that a Government Code former section 11507.7 petition would necessarily have provided the mechanism for Pitchess discovery, then refutes that asserted view at length. (Maj. opn., ante, at pp. 645-646.) But I take no position on how a former section 11507.7 petition and the Pitchess statutes might have interacted; the issue is, after all, long since moot. For present purposes, the significance of Government Code former section 11507.7, and of the current version of that same statute, is simply this: when it comes to withholding or granting in camera powers to nonjudicial hearing officers, the Legislature has acted *655 intentionally and explicitly. We cannot fairly assume that uniquely, in Evidence Code section 1045, it acted inadvertently and implicitly.
Turning the interpretive question on its head, the majority asks whether section 1045 contains a limit on who may act. The majority argues that section 1045 at most “implicitly” withholds from nonjudicial hearing officers the power to conduct in camera review (maj. opn., ante, at p. 632, italics omitted), and references to “ ‘the court’ ” in that statute should not be read “as a coded expression of legislative intent to substantively limit who may rule on Pitchess motions” (maj. opn., ante, at p. 637). But there is nothing implicit or coded about the statute. Its designation of who may conduct in camera review and issue appropriate protective and other orders is explicit and plain: “the court.” (§ 1045, subds. (b), (c), (d), (e).) When the Legislature intends a grant of authority to a broader group, it has available, and uses, a different and more encompassing term: “presiding officer.” (See §§ 905, 913-916, 919.) More fundamentally, the issue here is not whether section 1045 contains a limit on who may act. Rather, given that until 1995, when the Legislature amended the APA, only a judicial officer had the express power to conduct in camera review, the relevant inquiry ought to be whether section 1045 contains an unprecedented affirmative grant of such authority to a nonjudicial officer. By its terms, the statute does not.
The Legislature has taken pains historically to identify and limit who may conduct in camera review. Nothing in the text or history of the Pitchess discovery statutes authorizes us to undo that effort. We should honor the language the Legislature has chosen by giving it effect.
III.
If, as I conclude, section 1043 allows administrative discovery but section 1045 does not authorize administrative in camera review, the further question is how the statutory scheme, correctly applied, would operate here.
As noted, this dispute arises in a non-APA proceeding; no administrative law judge is involved, and nonjudicial officers other than administrative law judges have no power to issue protective orders, nor any authority to conduct in camera review. (§ 915, subd. (b); cf. Gov. Code, §§ 11511.5, subds. (b)(7), (e), 11507.7, subd. (d).) Section 1043, subdivision (c), however, authorizes any administrative body presented with a peace officer records discovery motion to conduct a hearing. At that hearing, the nonjudicial presiding officer may consider the arguments and evidence in favor of and against whether the requested information is material and likely to be possessed by the identified custodian of records, and may rule on whether a showing has been made to warrant discovery. (See § 1043, subd. (b)(3).) Although the nonjudicial officer *656 may not order in camera disclosure to assist in this determination (see § 915, subd. (b)), this is hardly unusual; the Evidence Code has always called on nonjudicial presiding officers to rule on privilege matters without examining the assertedly privileged documents (§§ 914, subd. (a), 915; see Southern Cal. Gas Co. v. Public Utilities Com. (1990) 50 Cal.3d 31, 45, fn. 19 [265 Cal.Rptr. 801, 784 P.2d 1373]). Privilege determinations nevertheless can be rendered based on all other available evidence. (See United States v. Reynolds (1953) 345 U.S. 1, 8-11 [97 L.Ed. 727, 73 S.Ct. 528]; Costco Wholesale Corp. v. Superior Court (2009) 47 Cal.4th 725, 737 [101 Cal.Rptr.3d 758, 219 P.3d 736].)
As has also always been the case, a nonjudicial order directing discovery is not self-executing. If the custodian of records voluntarily complies, with the consent of the officer whose personnel records are sought, the matter is at an end. If the custodian does not comply, or the party seeking discovery believes compliance has been only partial, no immediate sanction is available, but the party requesting discovery may seek referral of the matter to the superior court in the county where the administrative proceeding is ongoing. (§ 914, subd. (b); Code Civ. Proc., § 1991.) At this point, the provisions of Evidence Code section 1045 come into play; a court asked to enforce a nonjudicial order for section 1043 Pitchess discovery can review materials in camera to decide whether to issue a court order directing discovery, as well as a protective order (§ 1045, subd. (e)) or any other order “which justice requires” (id., subd. (d)).
The majority criticizes this view of the governing statutes as permitting compelled discovery without in camera review, as required by section 1045. To the contrary, unlike the majority’s construction, this view ensures in camera review, in all cases where discovery is contested, by the entity authorized to do such review — “the court.” Nothing in the statutory text or history supports the view the Legislature intended the contemplated protections to apply even in the rare hypothetical instance where a privilege holder might have no objection and waive the privilege.
To support its view that “shall examine” in section 1045 means “shall examine” even when the privilege is waived and disclosure uncontested, the majority points to earlier unenacted versions of the Pitchess discovery legislation that made in camera review optional by placing a burden on the privilege holder to affirmatively seek in camera review. (Maj. opn., ante, at pp. 643-644; e.g., Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 7, 1978, p. 3 [“In determining relevance, the court shall, at the request of any person authorized to claim the privilege, examine the information in chambers in conformity with Section 915 .. . .”].) The enacted version lifted that burden, ensuring that whenever discovery was opposed, in camera *657 review would follow as a matter of course. (§ 1045, subd. (b).) To interpret this change as also compelling review in uncontested cases, and the new privilege as unwaivable even by the holder, lacks any basis.
The majority also would find no statute currently authorizes transfer of a discovery dispute from a nonjudicial setting to a judicial setting, and in the absence of such a mechanism would read broad new powers for nonjudicial officers into section 1045. Given a choice between disregarding the plain text of section 1045, on the one hand, and reading section 914, subdivision (b) and Code of Civil Procedure section 1991 as collectively allowing a court to act on discovery disputes arising before nonjudicial officers, on the other, I would choose the latter course, the one that gives effect to the text of each relevant statute and accords with the Legislature’s long-standing desire “to protect persons claiming privileges in nonjudicial proceedings” from having to surrender those privileges at the sole behest of nonjudicial officers. (Assem. Com. on Judiciary com., reprinted at 29B pt. 3A West’s Ann. Evid. Code, supra, foll. § 914, p. 254.) Far from reading Pitchess discovery in administrative hearings out of section 1043, this approach embraces such discovery. Moreover, unlike the majority’s approach, it does so without also sacrificing equally significant protections for privileged information expressly codified in the in camera review provisions of section 1045.
Here, the majority again imputes to me, and then refutes, a position I do not assert in connection with a scenario not before us: that if this were an APA proceeding, the appropriate course necessarily would be to seek discovery under Government Code section 11507.7, rather than under Code of Civil Procedure section 1991. (See maj. opn., ante, at p. 646 [first imputing this imagined view and then using it to claim “[t]he dissent cannot have it both ways”].) Because this case does not involve the APA, neither I nor the majority need sort out which would be the correct course in such a proceeding. Concerning the non-APA proceeding that is before us, and the demonstration that Pitchess discovery can be had without violating the general rule against nonjudicial in camera review, the majority is largely silent.
IV.
Applying the foregoing framework to the instant case, I agree with the majority and the Court of Appeal that former Deputy Kristy Drinkwater can seek Pitchess materials through a motion filed with the nonjudicial hearing officer reviewing her termination. I cannot agree that the nonjudicial officer has authority to demand their production for in camera review. To so hold unjustifiedly eviscerates the protections in sections 914, 915, and 1045 that ensure judicial officers, and judicial officers alone, will conduct privilege review. Instead, any determination that good cause for discovery has been *658 shown should be followed, in the absence of voluntary compliance, by a request for a court order enforcing discovery under section 914, subdivision (b), and Code of Civil Procedure section 1991.
I respectfully dissent.
Baxter, J., concurred.

 Pitchess v. Superior Court (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (Pitchess).

 All further unlabeled statutory references are to the Evidence Code.

 The commission’s recommendations were delivered to the Legislature, which expressly endorsed the commission’s commentary as reflecting its own intent unless otherwise noted. (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 333 (1965 Reg. Sess.) 1 Assem. J. (1965 Reg. Sess.) p. 1712; Sen. Com. on Judiciary, Rep. on Assem. Bill No. 333 (1965 Reg. Sess.) 2 Sen. J. (1965 Reg. Sess.) p. 1573.) Consequently, “with respect to unchanged sections of the Evidence Code the commission’s comments state the intent of the Legislature regarding those sections.” (Arellano v. Moreno (1973) 33 Cal.App.3d 877, 884 [109 Cal.Rptr. 421].) This principle applies fully to each section I discuss.

 Stressing the importance of section 915’s safeguards, the Commission explained in camera disclosure will frequently be wholly prohibited, and even when it is allowed, “[s]ection 915 undertakes to give adequate protection to the person claiming the privilege by providing that the information be disclosed in confidence to the judge and requiring that it be kept in confidence if it is found to be privileged.” (Cal. Law Revision Com. com., 29B pt. 3A West’s Ann. Evid. Code, supra, foll. § 915, p. 256.)

 The majority is quite right to note no special focus was placed on who would conduct the review (maj. opn., ante, at pp. 643-644), the reason being no special focus was needed; the various bill analyses, like the text of section 1045, carried forward the assumption that had always been true, that in camera review was something done only by courts and judges. If the *654 Legislature contemplated a departure from that well-established practice, as the majority posits, one would expect the legislative history to so indicate. Instead, there is only silence.