FEDERAL DEPOSIT INSURANCE COR-
PORATION, in its corporate capacity
and as Receiver of Great American Fed-
eral Savings Association, a Federal Sav-
ings Association, Plaintiff,

v.

FIDELITY & DEPOSIT COMPANY OF
MARYLAND; Aetna Casualty & Surety
Company, National Union Fire Insur-
ance Company of Pittsburgh, Those Cer-
tain Underwriters at Lloyds et al., De-
fendants.

No. 97–CV–1068 W(AJB).

United States District Court,
S.D. California.

May 1, 2000.

Anthony J. Dain, Procopio, Cory, Hargreaves and Savitch, San Diego, CA, John Owen Lanahan, Law Office of John Lanahan, San Diego, CA, Victor L. Roy, III, William L. Caughman, III, Kyle M. Keegan, Susannah M. DeNicola, Tamra Glynn Vinson, Roy, Kiesel and Tucker, Baton Rouge, LA, for plaintiff.

Michael R. Davisson, Sedgwick Detert Moran and Arnold, Los Angeles, CA, for Fidelity and Deposit Co. of Maryland.

David E. Reynolds, Lewis DAmato Brisbois and Bisgaard, Los Angeles, CA, Kenneth Sagat, DAmato and Lynch, New York City, for National Union Fire Insurance Co. of Pittsburgh, Pennsylvania.

Susan Elizabeth Basinger, Higgs Fletcher and Mack LLP, San Diego, CA, Norbert J. Wegerzyn, Charles David Thomas, Julie Freund Wall, Jennifer S. Stegmaier, Peterson and Ross, Chicago, IL, for Those Certain Underwriters at Lloyd's London.

Gary J. Valeriano, Anderson McPharlin and Conners, Los Angeles, CA, for Travelers Casualty and Surety Company.

## ORDER GRANTING IN PART AND DENYING IN PART OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

WHELAN, District Judge.

Plaintiff Federal Deposit Insurance Corporation ("FDIC"), acting as receiver of Great American Bank ("GAB"), brings this action under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). FDIC seeks to collect on several fidelity bonds issued to GAB that provide coverage against the dishonest or fraudulent acts of GAB's employees.

On January 10, 2000 FDIC filed a motion for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. (Doc. No. 330). FDIC argued that the attorney-client privilege and work-product protection covered the inadvertently disclosed documents and sought an order requiring Defendants to return them. Defendants Underwriters, Travelers Casualty and Surety Company and National Union Fire Insurance Company of Pittsburgh opposed the motion, contending FDIC's inadvertent disclosure constituted a waiver of the attorney-client and work-product protections. (Doc. Nos. 342, 343, 344).

On February 29, 2000 the Honorable Anthony J. Battaglia, United States Magistrate Judge, denied FDIC's motion and concluded that FDIC waived its attorney-client and work-product protections as to all documents in question. (Doc. No. 375). On March 10, 2000 FDIC filed objections to the order. On March 23, 2000 Defendants filed separate oppositions. On April 14, 2000 FDIC filed its reply.

The Court has read and considered FDIC's objections, Defendants' responses,

FDIC's reply, all attached exhibits and the applicable law. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** FDIC's objections to the Magistrate Judge's order.

## I. STANDARD OF REVIEW

■ A party may object to any non-dispositive discovery order of a United States Magistrate Judge within 10 days of service of the order. *See* FED. R. CIV. P. 72(a). The district judge will uphold the magistrate judge's order unless it is "clearly erroneous or contrary to law." *Computer Economics, Inc. v. Gartner Group, Inc.,* 50 F.Supp.2d 980, 983 (S.D.Cal.1999). The "clearly erroneous" standard applies to factual findings and discretionary decisions made in connection with non-dispositive pretrial discovery matters. *Id.; Joiner v. Hercules, Inc.,* 169 F.R.D. 695, 697 (S.D.Ga.1996) (reviewing magistrate judge's order addressing attorney-client issues in discovery for clear error). Under the "clearly erroneous" standard, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Computer Economics, Inc.,* 50 F.Supp.2d at 983 (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 943 (7th Cir.1997)). The "contrary to law" standard, however, permits independent review of purely legal determinations by the magistrate judge. *Id.; Haines v. Liggett Group, Inc.,* 975 F.2d 81, 91 (3d Cir.1992) ("[T]he phrase 'contrary to law' indicates plenary review as to matters of law.").

## II. DISCUSSION

■ To determine whether FDIC waived its attorney-client privilege and work-product

protections, Magistrate Judge Battaglia applied the five factor test articulated in *Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323 (N.D.Cal.1985). That test generally considers whether waiver has occurred based upon a review of several factors, including: (1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the "overriding issue of fairness." *Id.* at 332 (quoting *Lois Sportswear USA, Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y. 1985)). Applying these factors, Magistrate Judge Battaglia concluded that most, if not all, of them supported a finding of waiver. Magistrate Judge Battaglia relied heavily upon FDIC's (1) failure to take sufficient precautions to prevent inadvertent disclosure, and its (2) failure to undertake timely and reasonable efforts to rectify the inadvertent disclosure.

■ Unfortunately, having made the initial mistake of inadvertently disclosing documents in discovery, FDIC's counsel has compounded that error by citing and relying on the wrong legal standard for determining whether its conduct operated as a waiver of the attorney-client privilege. FDIC's briefs before the Magistrate Judge and before this Court failed to recognize the result mandated by the Federal Rules of Evidence.[1]

■ Rule 501 of the Federal Rules of Evidence governs evidentiary privileges in district courts. The Rule provides in pertinent part:

Except as otherwise required by the Constitution of the United States or provided

---

1. FDIC's failure to articulate the proper legal standard, regrettably, places the Court in the awkward position of having to formulate the obvious legal argument FDIC should have raised in its briefs. *United States v. Brown,* 899 F.2d 677, 679 (7th Cir.1990) ("[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel"). However, to allow the admission of privileged documents at trial, in a case of this size pending for over three years, poses a significant risk that a judgment entered in favor of Defendants will be upset on appeal once FDIC turns the case over to more capable

appellate counsel. The Ninth Circuit could reverse on the ground that the Court applied the wrong legal standard, notwithstanding that FDIC did not argue the correct one in its briefs. *Telco Leasing, Inc. v. Transwestern Title Co.,* 630 F.2d 691, 693–94 (9th Cir.1980) (reversing award of attorney's fees based on district court's erroneous application of California rather than Illinois law; although appellant failed to raise choice of law issue below, the district court's ruling was "plain error."). The potential for such an inexcusable and preventable waste of judicial resources, the Court finds, justifies identifying the correct legal standard *sua sponte.*

by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

FED. R. EVID. 501. The first sentence of Rule 501 establishes that federal common law generally controls evidentiary privileges in cases arising under federal law. *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989); *Clarke v. American Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir.1992) ("Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law."). The second sentence requires district courts to apply state law in cases governed by state law. *In re California Public Utilities Com'n*, 892 F.2d 778, 781 (9th Cir.1989) (state law applies to diversity actions governed by state law).[2]

The two questions before the Court, therefore, are (1) whether state or federal law supplies the law governing FDIC's claims, which, by extension, will determine the law governing waiver of the attorney-client privilege, and (2) whether, based on that standard, waiver occurred.

### A. *GOVERNING LAW*

■ Under FIRREA, suits by the FDIC acting in its corporate capacity are "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A). This statute, however, merely provides a federal forum for suits brought by the FDIC; it does not require the application of federal law to issues in such suits. For example, in *O'Melve-*

*ny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), the Supreme Court held that state law generally governs disputed issues in suits brought by the FDIC. The FIRREA statutory provisions vesting the FDIC with authority as receiver, according to the Court, merely "place[ ] the FDIC in the shoes of the insolvent [bank] to work out [the bank's] claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." *Id.* at 87, 114 S.Ct. at 2054. The Supreme Court noted, "[t]o create additional 'federal common-law' exceptions [to FIRREA] is not to 'supplement' this scheme, but to alter it." *Id.*

Following this principle, federal courts have consistently applied *state law* to cases where the FDIC sues on behalf of an insolvent bank under FIRREA. *Atherton v. FDIC*, 519 U.S. 213, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997) (holding that state rather than federal law governs standard of care for bank officers and directors); *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) (holding that California law governs imputation of corporate officer's knowledge of fraud to corporation); *FDIC v. Castetter*, 184 F.3d 1040, 1043 (9th Cir.1999) (California law applied to suit by FDIC against directors of federally insured national bank). Federal courts have applied state law to disputes concerning whether bank officers' misconduct was "discovered" during the period of fidelity bonds similar to those at issue in this litigation. *RTC v. Fidelity and Deposit Co. of Maryland*, 205 F.3d 615, 626 (3d Cir.2000) (New Jersey law applied to dispute over whether fraudulent or dishonest acts of bank employees were discovered during policy period of fidelity bond); *FDIC v. National Union Fire Ins. Co. of Pittsburgh, PA*, 205 F.3d 66, 70 (2d Cir.2000) (same; applying New York law); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 481–82 (9th Cir.1991) (same; applying California law).

---

**2.** Indeed, the privilege cases cited by the parties' briefs all involved cases governed exclusively by federal law. *Hartford Fire Ins. Co.,* 109 F.R.D. at 327 (federal common law of attorney-client privilege applied in admiralty and maritime case);

*Weil v. Investment/Indicators, Research and Management, Inc.,* 647 F.2d 18, 25 & n. 1 (9th Cir. 1981) (federal common law of attorney-client privilege applied in suit brought under federal securities laws).

 Because state law would clearly provide the controlling law on the interpretation of the fidelity bonds and when the GAB's employees and officers "discovered" the alleged misconduct, Rule 501 requires application of state law to resolve whether inadvertent disclosure operates as a waiver of FDIC's attorney-client privilege. *See, e.g., Davis v. Leal,* 43 F.Supp.2d 1102, 1108 (E.D.Cal.1999) (California law controlled privilege issues in suit brought by FDIC as receiver of failed bank because California law governed substantive issues in the case); *In re Megan–Racine Assocs., Inc.,* 189 B.R. 562, 569 (Bankr.N.D.N.Y.1995) (state attorney-client privilege law applied in contract case against FDIC acting as receiver of failed bank because state law governed whether underlying contracts were valid or breached).

### B. ATTORNEY-CLIENT PRIVILEGE: LAW AND APPLICATION

 Under California law,[3] the party asserting the attorney-client privilege bears the initial burden of proving that a communication has been made in confidence during the course of the attorney-client relationship. *State Farm Fire & Casualty Co. v. Superior Court,* 54 Cal.App.4th 625, 639, 62 Cal.Rptr.2d 834, 843–44 (1997). Once the party asserting the privilege makes this initial showing, the burden shifts to the party opposing the privilege to show either that the information was not confidential or that it falls within an exception. *Id.* at 639, 62 Cal.Rptr.2d at 844. Here, Defendants contend FDIC "waived" its attorney-client privilege as to several documents by inadvertently disclosing them during discovery.

 Under California law, waiver of the attorney-client privilege depends entirely on whether the client provided knowing and voluntary consent to the disclosure. "A trial court called upon to determine whether inadvertent disclosure of privileged information constitutes waiver of the privilege must examine both *the subjective intent* of [client] and the relevant surrounding circumstances for any manifestation of the [client's] consent to disclose the information." *State Compensation Ins. Fund v. WPS, Inc.,* 70 Cal. App.4th 644, 652–53, 82 Cal.Rptr.2d 799, 805 (1999) (emphasis added). Waiver of the privilege, therefore, does not occur by "accidental, inadvertent disclosure of privileged information by the attorney." *Id.* at 654, 82 Cal.Rptr.2d at 805; *KL Group v. Case, Kay & Lynch,* 829 F.2d 909, 918–19 (9th Cir.1987) (applying California law and holding that client did not waive attorney-client privilege when its attorneys inadvertently disclosed documents during discovery; affirming district court's protective order requiring the return of privileged documents). As one court recognized, California law repudiates the doctrine of inadvertent disclosure as a basis for waiver of the attorney-client privilege:

> [D]iscovery is coercion. The force of law is being brought upon a person to turn over certain documents. Inadvertent disclosure during discovery by no stretch of the imagination shows consent to the disclosure: It merely demonstrates that the poor paralegal or junior associate who was lumbered with the tedious job of going through voluminous files and records in preparation for a document production may have missed something. [Plaintiff] invites us to adopt a "gotcha" theory of waiver, in which an underling's slip-up in a document production becomes the equivalent of actual consent. We decline. The substance of an inadvertent disclosure under such circumstances demonstrates that there was no voluntary release.

*O'Mary v. Mitsubishi Elec. Am.,* 59 Cal.App. 4th 563, 577, 69 Cal.Rptr.2d 389, 398–99 (1997). Here, nothing in the record suggests that the counsel's inadvertent disclosure of allegedly privileged documents manifested FDIC's knowing and voluntary relinquishment of its attorney-client privilege. To the extent the disputed documents fall within the scope of the privilege, California law requires they remain privileged notwithstanding their inadvertent disclosure during discovery.

---

**3.** For purposes of this order, the Court assumes that California state law applies because all of the disputed events in this case occurred in Cali-fornia. The parties' previous motions for summary judgment, moreover, relied upon California cases to advance their respective positions.

## C. ATTORNEY WORK-PRODUCT

Although Rule 501 mandates a finding that the FDIC attorneys did not waive their client's attorney-client privilege through inadvertent disclosure, the Court affirms the Magistrate Judge's order as applied to the attorney work-product protection.

 While the attorney-client privilege serves to promote communication between attorney and client, the work-product doctrine serves to balance an attorney's ability to prepare in representing its client against society's interest in revealing all true and material facts relevant to the resolution of a dispute. *Hickman v. Taylor,* 329 U.S. 495, 509–12, 67 S.Ct. 385, 392–94, 91 L.Ed. 451 (1947). Unlike the attorney-client privilege, the work-product doctrine is a procedural immunity and *not an evidentiary privilege. Connolly Data Systems, Inc. v. Victor Technologies, Inc.,* 114 F.R.D. 89, 95 n. 4 (S.D.Cal.1987). Federal law, not state law, provides the governing law on the scope and extent of the attorney work-product doctrine. *Id.* at 95; *United Coal Cos. v. Powell Constr. Co.,* 839 F.2d 958, 966 (3d Cir.1988) ("Unlike the attorney client privilege, the work-product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed.R.Civ.P. 26(b)(3)..."); *Railroad Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.) Inc.,* 97 F.R.D. 37, 40 (E.D.N.Y.1983) (same).

As discussed previously, Magistrate Judge Battaglia's order applied the federal common law *Hartford Fire Ins. Co.* test to determine whether FDIC waived its attorney-client privilege and work-product protection. Although *Hartford Fire Ins.* addressed waiver in the context of the attorney-client privilege, federal courts have applied the same five-factors to determine whether inadvertent disclosure waives the attorney work-product protection. *See, e.g., Milford Power Ltd. Partnership v. New England Power Co.,* 896 F.Supp. 53, 58 (D.Mass.1995).

 The Magistrate Judge balanced the *Hartford Fire Ins. Co.* factors and determined that FDIC waived its attorney work-product protection. The Magistrate Judge noted that: (1) Plaintiff produced 61 boxes of privileged documents when it was not pressed by time constraints or an unreasonable production request; (2) once Plaintiff determined that the documents were privileged, Plaintiff waited an unreasonable time to re-review these documents, resulting in further dissemination; (3) Defendants reviewed all of the documents so that the extent of disclosure was complete; and (4) the overriding issues of fairness did not favor plaintiff, and further supported a finding of waiver.

Having read and considered the papers submitted by the parties, the Court finds that the Magistrate Judge's ruling is supported in the record and was neither clearly erroneous nor an abuse of discretion. The Court therefore AFFIRMS the Magistrate Judge's finding that FDIC waived any attorney work-product protection extending over the inadvertently disclosed documents.

## III. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** FDIC's objections to Magistrate Judge's order denying Plaintiff's motion for protective order for the return of privileged documents. [Doc. No. 380].

Specifically, the Court holds that as to the *attorney-client* privilege, (1) California law governs, and (2) no waiver occurred under California law. As to the *work-product* protection, however, (1) federal law controls, and (2) the Magistrate Judge did not clearly error in determining that FDIC waived the attorney work-product protection. FDIC has therefore waived the work-product immunity, but not the attorney-client privilege, as to all inadvertently disclosed documents.[4]

**IT IS SO ORDERED.**

---

4. This order does not resolve several collateral issues, including (1) whether the inadvertently

disclosed documents qualify as confidential communications protected by the attorney-client privilege under California law, (2) whether a protective order returning the documents to FDIC is an appropriate, equitable or even enforceable remedy under the circumstances of this case, or (3) whether Defendants may use the "fruits" of these documents to defend against FDIC's claims. None of the briefs filed with the Court provide a sufficient factual basis to resolve these issues; the parties may resolve them by stipulation, by informal agreement, or by bringing an appropriate motion before the Magistrate Judge.