**In re 3DFX INTERACTIVE, INC., Debtor.**

**William A. Brandt, Jr., Trustee, Plaintiff,**

**v.**

**nVidia Corporation, a Delaware corporation; et al., Defendants.**

**Bankruptcy No. 02–55795 JRG. Adversary No. 03–5079.**

United States Bankruptcy Court, N.D. California.

June 7, 2006.

See also 2006 WL 2242369.

Stephen T. O'Neill, Law Offices of Murray and Murray, Cupertino, CA, Robert A. Trodella, Jr., Heller, Ehrman, White and McAuliffe, San Francisco, CA, for debtor.

Sblend A. Sblendorio, Hoge, Fenton, Jones and Appel, Pleasanton, CA, for trustee.

## ORDER RE MOTION TO COMPEL PRODUCTION OF DOCUMENTS (CRIME FRAUD)

JAMES R. GRUBE, Bankruptcy Judge.

On March 2, 2006, the court heard Trustee's motion to compel the production of documents based on the crime-fraud exception to the attorney-client privilege. The court has considered the papers filed and the arguments presented at the hearing. For the reasons stated below, the court denies the motion in part and grants the motion in part.

## I. BACKGROUND

Debtor 3dfx and nVidia were competitors in the field of 3D graphics processor chips. In 1998 3dfx filed a patent infringement lawsuit against nVidia. In October

2000, 3dfx received a ruling adopting 3dfx's claimed construction of the patent and rejecting nVidia's construction. Within weeks, nVidia initiated negotiations to purchase 3dfx's graphics chip business. At the time of the asset purchase negotiations, the parties expected 3dfx to run out of cash in early 2001.

nVidia's opening offer to 3dfx was $100 million in cash.3dfx countered with $100 million in cash and one million shares of nVidia stock. The parties ultimately agreed that nVidia would pay $70 million to 3dfx for the business—$15 million at the time the deal was signed as a bridge loan and $55 million at closing—plus one million shares of nVidia stock. Under the terms of the signed asset purchase agreement (APA) dated December 15, 2000, the transfer of the one million shares of nVidia stock was conditioned upon 3dfx dissolving in a manner approved by nVidia and certifying that all liabilities had been paid in full or in a manner satisfactory to nVidia. That was not done and the nVidia stock was not transferred to 3dfx.

3dfx filed its chapter 11 bankruptcy petition on October 15, 2002. William Brandt, Jr. ("Trustee") was appointed the chapter 11 trustee on January 24, 2003. Trustee sued nVidia on February 24, 2003 to recover a fraudulent transfer.

## II. PARTIES' POSITIONS

### A. Trustee's Argument

Trustee asserts that state law governs the attorney-client privilege analysis and that a fraudulent transfer is a misdemeanor crime under California Penal Code § 531 [1], thus invoking the crime-fraud ex-

---

**1.** California Penal Code § 531 provides:

Every person who is a party to any fraudulent conveyance of any lands, tenements, or hereditaments, goods or chattels, or any right or interest issuing out of the same, or

to any bond, suit, judgment, or execution, contract or conveyance, had, made, or contrived with intent to deceive and defraud others, or to defeat, hinder, or delay creditors or others of their just debts, damages,

ception. Trustee argues that at the time the APA was signed, nVidia knew that the $70 million would not pay 3dfx's creditors in full and knowingly participated in a scheme to defraud 3dfx's creditors by structuring the APA in such a way that it conditioned the release of the stock on certain unattainable conditions. Trustee alleges that nVidia communicated with its attorneys to further the fraudulent transfer and, since such communications violate California Penal Code § 531, all privileged documents that refer, reflect, or evidence the planning, structuring, drafting, negotiation, and/or closing of the transaction reasonably relate to the crime or fraud and must be produced since the attorney-client privilege is waived.

In addition, Trustee alleges that at the closing 3dfx had five creditors with writs of attachment against monies owed 3dfx under the APA. Rather than comply with the writs, nVidia paid a portion of the closing funds into an escrow account that it did not reveal to the writ creditors at the request of 3dfx. Trustee asserts that all documents that refer, reflect, or evidence the "secret" escrow account are subject to the crime-fraud exception.

Finally, around the time that the APA was executed, Trustee alleges nVidia agreed that it would assume the long term leases for 3dfx's premises. nVidia later decided not to assume the leases or occupy those premises for the long term, purposely did not tell the landlords of this decision for several months and directed its in-house counsel to tell 3dfx and the Austin, Texas landlord that nVidia did not want the lease only after securing other space. Trustee alleges nVidia sought or obtained the services of its in-house counsel to deceive the Austin, Texas landlord.

## B. nVidia's Argument

nVidia opposes Trustee's motion on timeliness and substantive grounds. nVidia asserts that the crime-fraud exception is limited in nature and Trustee has not made his requisite prima facie case of a crime or fraud. Even if Trustee makes that case, there is no reasonable, causal relationship between the fraud and the specific attorney-client communications at issue.

nVidia's asserts at the time that the APA was executed in December 2000, 3dfx and nVidia believed that $70 million from the transaction would be enough to satisfy creditors and the deal was structured to provide a cushion in case the parties were wrong. The APA was structured so that the cash would be used to satisfy creditors and 3dfx's shareholders would not receive the nVidia stock until the creditors were satisfied. The APA permitted 3dfx to monetize an additional $25 million of the nVidia stock as an additional means of satisfying creditors. With respect to the escrow account, nVidia previously showed that the escrow account was established to ensure that certain of 3dfx's creditors were paid. With respect to the leases, nVidia asserts that nVidia never agreed to assume any of the leases and that the leases are expressly excluded as assets purchased by nVidia in the APA. The leases were only included in draft schedules of the APA and were not in the final version. nVidia asserts that it never intended to acquire or assume the leases.

or demands; or who, being a party as aforesaid, at any time wittingly and willingly puts in, uses, avows, maintains, justifies, or defends the same, or any of them, as true, and done, had, or made in good faith, or upon good consideration, or aliens, assigns, or sells any of the lands, tenements, hereditaments, goods, chattels, or other things before mentioned, to him or them conveyed as aforesaid, or any part thereof, is guilty of a misdemeanor.

Finally, nVidia argues that the crime-fraud exception applies only to individual documents and not to broad categories of documents as asserted by Trustee. Only documents reasonably related to the fraud are discoverable and there must be some relationship between each communication in question and the supposed fraud or illegality. nVidia requests sanctions.

## III. DISCUSSION

### A. Timeliness of Motion

Civil Local Rule 26–2, incorporated by Bankruptcy Local Rule 1001–2(37), provides:

> Unless otherwise ordered, as used in any order of this Court or in these Local Rules, a "discovery cut-off" is the date by which all responses to written discovery are due and by which all depositions must be concluded.
>
> Where the Court has set a single discovery cut-off for both fact and expert discovery, no motions to compel discovery may be filed more than 7 court days after the discovery cut-off.
>
> Where the Court has set separate deadlines for fact and expert discovery, no motions to compel fact discovery may be filed more than 7 court days after the fact discovery cut-off, and no motions to compel expert discovery may be filed more than 7 court days after the expert discovery cut-off.
>
> Discovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown.

In *Goodworth Holdings Inc. v. Suh*, 239 F.Supp.2d 947, 966 (N.D.Cal.2002), *aff'd*, 99 Fed.Appx. 806 (9th Cir.2004), the district court inferred that a motion to compel could be brought after the 7 court day deadline of Civil Local Rule 26–2. In denying a motion for reconsideration, the district court stated:

Plaintiff's motion to compel was not denied because the desired evidence was not likely to be helpful to its case—it was denied because it was inexcusably late. As the August 28, 2002 order stated:

> Per Local Rule 26–2, "[n]o motions to compel discovery may be filed more than 10 days after the discovery cut-off." The discovery cut-off in this case was August 2, 2002, pursuant to the Case Management Order of December 6, 2001. Because plaintiff has not provided a viable excuse for this violation, this request is denied.

*Goodworth Holdings*, 239 F.Supp.2d at 966.

█ Based on a review of all of the letters and e-mails submitted by both parties in this motion, Trustee first raised the crime-fraud exception with nVidia by letter dated July 2, 2004. The fact discovery cut-off was August 20, 2004. However, the parties agreed to continue depositions of certain fact witnesses after the discovery cut-off and did not seek a court order memorializing this agreement. Some of the evidence used by Trustee in support of this motion to compel is testimony from the post-discovery cut-off depositions. nVidia agreed to stay this litigation pending the mediation efforts shortly after the last post-discovery cut-off deposition was completed. Trustee filed this motion within six weeks of notifying nVidia that he was no longer staying this litigation. Based on nVidia's actions regarding staying the litigation pending mediation efforts, there is a viable excuse that permits Trustee to file the motion to compel after the 7 court day deadline in Civil Local Rule 26–2.

### B. Legal Standard Regarding Waiver of Attorney–Client Privilege

█ Federal Rule of Evidence 501 provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Since this action involves claims and defenses under state law, federal common law does not apply with respect to privilege issues. *KL Group v. Case, Kay & Lynch,* 829 F.2d 909, 918 (9th Cir.1987); *FDIC v. Fidelity & Deposit Co. of Maryland,* 196 F.R.D. 375, 380 (S.D.Cal.2000) (*"FDIC Maryland"*).

■ Generally, communications between a lawyer and client which are intended to be confidential are protected from disclosure. Cal. Evid.Code § 954. Confidential communications include not only information given by a client to his or her attorney but also the attorney's legal opinion and advice given to the client. Cal. Evid.Code § 952.

■ Under California law, the party asserting the attorney-client privilege bears the initial burden of proving that a communication has been made in confidence during the course of the attorney-client relationship. *FDIC Maryland,* 196 F.R.D. at 380 (citing *State Farm Fire &*

*Casualty Co. v. Superior Court,* 54 Cal. App.4th 625, 639, 62 Cal.Rptr.2d 834 (1997)). Once the party asserting the privilege makes the initial showing, the burden shifts to the party opposing the privilege to show either that the information was not confidential or that it falls within an exception. *Id.*

## C. Crime–Fraud Exception

■ California Evidence Code § 956 provides the crime-fraud exception to attorney-client privilege.[2] This is a very limited exception to the attorney-client privilege. *Geilim v. Superior Court,* 234 Cal.App.3d 166, 174, 285 Cal.Rptr. 602 (1991). In California, for the crime-fraud exception to apply, two elements must be shown. First, the party opposing the privilege must establish a prima facie case of a crime or fraud. *Cunningham v. Connecticut Mutual Life Insurance,* 845 F.Supp. 1403, 1412 (S.D.Cal.1994) (citing *BP Alaska Exploration, Inc. v. Superior Court,* 199 Cal.App.3d 1240, 1262, 245 Cal.Rptr. 682 (1988); *Nowell v. Superior Court,* 223 Cal.App.2d 652, 657, 36 Cal.Rptr. 21 (1963)). Second, the party must also establish a reasonable relationship between the crime or fraud and the attorney-client communication. *BP Alaska,* 199 Cal. App.3d at 1268, 245 Cal.Rptr. 682. A prima facie showing of fraud has a foundation in fact and consists of evidence from which reasonable inferences can be drawn to establish the crime or fraud. *Id.* at 1262, 245 Cal.Rptr. 682. The elements of fraud necessary to establish the exception are: (1) a misrepresentation of material fact; (2) knowledge of the representation's falsity; (3) intent to deceive; and (4) the right to rely on the representation. *Id.* at 1263, 245 Cal.Rptr. 682. Under California law,

2. California Evidence Code § 956 provides: There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud.

the crime-fraud exception does not result in wholesale waiver of attorney-client privilege. Rather, the exception only extends to those communications reasonably related to the crime or fraud. *Cunningham,* 845 F.Supp. at 1415.

 Trustee's crime-fraud exception argument based on the structure of the transaction relies largely on the inference that nVidia knew in December 2000, at the time it negotiated the APA, that the transaction would not provide sufficient funds to pay 3dfx's creditors in full. Certain evidence counters this inference. The deposition testimony of Christine Hoberg, nVidia's former CFO, states that in December 2000, nVidia believed that the cash from the transaction with 3dfx plus the liquidation of the first tranche of the nVidia stock would be sufficient to pay 3dfx's creditors in full. The draft report dated December 15, 2000 from KPMG, nVidia's accountant, states that 3dfx will need an additional $11.3 million to cover liabilities (before certain negative possibilities) after receiving the $70 million from nVidia. Section 1.3 of the APA provides that 3dfx can liquidate half of the nVidia stock (a value of $25 million) to pay for additional liabilities. The deposition testimony of Alex Leupp, part of 3dfx's management, states that nVidia requested the APA provision that the release of the stock be triggered by a satisfaction of 3dfx's liabilities and, at the time that provision was included in the APA, it appeared, based on information from 3dfx's CFO, that the $70 million would be sufficient to pay 3dfx's creditors in full.

Under California Penal Code § 531, a party to a fraudulent conveyance is liable for a misdemeanor if that party acted "with intent to deceive and defraud others, or to defeat, hinder, or delay creditors or others of their just debts, damages, or demands." Based on the evidence submitted with this motion and without considering the credibility of the witnesses, Trustee has not made a sufficient showing that nVidia acted with intent to defraud 3dfx's creditors when it and 3dfx structured the APA in December 2000. Trustee has not met the first element of the crime-fraud exception.

 Regarding the escrow account, the only aspect that falls within the crime-fraud exception is nVidia's conspiracy with 3dfx to keep the knowledge of that account from the writ creditors that the escrow account benefitted. Trustee submitted as evidence an e-mail dated April 24, 2001, from Stephen Pettigrew, nVidia's in-house counsel to Richard Heddleson, 3dfx's CFO, forwarding an e-mail of the same date from nVidia's outside counsel to Pettigrew and Hoberg which states "I recognize that Nvidia is trying to assist 3dfx's negotiations with these creditors by not revealing the existence of the escrow" and that the escrow will not be mentioned until instructed to do so. Based on this e-mail, Trustee has established a prima facie case for the crime-fraud exception to nVidia's participation in concealing the escrow account from writ creditors.

 Regarding the leases, the only evidence submitted by Trustee on this issue is a red-lined copy of Schedule 2.9 to the APA that lists various leases and a February 8, 2001 e-mail correspondence between Pettigrew and Hoberg regarding what nVidia would like to do with the leases. Section 2.9 of the APA is a representation by 3dfx that Schedule 2.9 is a list of the only leasehold interests held by 3dfx. The red-lined document submitted by Trustee is consistent with such a listing. Trustee has presented no evidence that nVidia represented to 3dfx that it intended to assume certain leases and has failed to make a sufficient showing to apply the crime-fraud

exception to any representation by nVidia regarding the leases.

## IV. CONCLUSION

The court finds that the crime-fraud exception applies only to those documents that relate to nVidia concealing the existence of the escrow account from 3dfx's attachment creditors. Because Trustee's challenge log does not specify to which aspect of the crime-fraud exception each objection relates, on or before June 30, 2006, Trustee shall serve nVidia with a list of the documents Trustee believes for which the attorney-client privilege is waived under this limited ruling. If the parties cannot agree on the documents to be turned over, the parties shall meet and confer in an attempt to resolve the matter. If the parties cannot resolve the matter, the parties can renew this motion on 20 days notice. If the motion is renewed, each party shall file simultaneously 7 days before the hearing a brief of no more than 5 pages setting forth each parties' position.