**In re 3DFX INTERACTIVE, INC., Debtor.**

**William A. Brandt, Jr., Trustee, Plaintiff,**

v.

**nVidia Corporation, a Delaware corporation; et al., Defendants.**

**Bankruptcy No. 02–55795 JRG.**

**Adversary No. 03–5079.**

United States Bankruptcy Court, N.D. California.

June 21, 2006.

See also 2006 WL 2242443.

Stephen T. O'Neill, Law Offices of Murray and Murray, Cupertino, CA, Robert A. Trodella, Jr., Heller, Ehrman, White and McAuliffe, San Francisco, CA, for Debtor.

Sblend A. Sblendorio, Hoge, Fenton, Jones and Appel, Pleasanton, CA, for Defendants.

## ORDER RE MOTION TO COMPEL PRODUCTION OF DOCUMENTS (WAIVER)

JAMES R. GRUBE, Bankruptcy Judge.

On March 2, 2006, the court heard Trustee's motion to compel the production of documents based on various alleged waivers of the attorney-client privilege. The court has considered the papers filed and the arguments presented at the hearing. For the reasons stated below, the court denies the motion.

## I. BACKGROUND

Debtor 3dfx and nVidia were competitors in the field of 3D graphics processor chips. In 1998 3dfx filed a patent infringement lawsuit against nVidia. In October 2000, 3dfx received a ruling adopting 3dfx's claimed construction of the patent and rejecting nVidia's construction. Within weeks, nVidia initiated negotiations to purchase 3dfx's graphics chip business. At the time of the asset purchase negotiations, the parties expected 3dfx to run out of cash in early 2001.

nVidia's opening offer to 3dfx was $100 million in cash. 3dfx countered with $100 million in cash and one million shares of nVidia stock. The parties ultimately agreed that nVidia would pay $70 million to 3dfx for the business—$15 million at the time the deal was signed as a bridge loan and $55 million at closing—plus one million shares of nVidia stock. Under the terms of the signed asset purchase agreement (APA) dated December 15, 2000, the transfer of the one million shares of nVidia stock was conditioned upon 3dfx dissolving in a manner approved by nVidia and certifying that all liabilities had been paid in full or in a manner satisfactory to nVidia. That was not done and the nVidia stock was not transferred to 3dfx.

3dfx filed its chapter 11 bankruptcy petition on October 15, 2002. William Brandt, Jr. ("Trustee") was appointed the chapter 11 trustee on January 24, 2003. Trustee sued nVidia on February 24, 2003 to recover a fraudulent transfer.

## II. PARTIES' POSITIONS

### A. Trustee's Argument

Trustee moves to compel the production of documents withheld by nVidia for attorney-client privilege and/or work product doctrine assertions. Trustee asserts the attorney-client privilege was waived on several grounds:

(1) Trustee asserts that in-house and outside counsel who acted as legal and business advisors waived the attorney-client privilege as to certain communications. Trustee argues nVidia's in-house counsel Stephen Pettigrew and Paul Carmichael acted as business advisors with respect to the negotiation, implementation and closing of the transaction. Because the dominant purpose of their consultation was to promote the business position of nVidia, neither the attorney-client privilege nor work product doctrine applies to any aspect of their work in negotiating, preparing and implementing the APA. Trustee contends nVidia's outside counsel, Cooley Godward, attended board of directors meetings and discussed business aspects of the transaction, including concerns that 3dfx would not be able to pay off its creditors, and provided business advice regarding the inclusion of an escrow provision in a term sheet. Trustee alleges that this is a waiver of all communications between nVidia and Cooley Godward regarding the negotiation and implementation of the APA.

(2) Trustee asserts nVidia waived its attorney-client privilege on the areas of: (a) the structure of the transaction; (b) the value of the assets; (c) nVidia's lease assumption; and (d) the escrow account because witnesses have testified and a significant amount of privileged documents have been produced on these topics.

(3) Trustee asserts nVidia waived its attorney-client privilege regarding the structure of the transaction by disclosing how the deal was structured and the reasoning behind it in the press.

(4) Trustee asserts nVidia waived any privilege as to the value of the assets by denying Trustee's allegations that nVidia failed to pay reasonably equivalent value.

(5) Trustee asserts nVidia's transmission of information to outside counsel, without any other basis for being privileged, is not privileged.

(6) Trustee asserts that documents that were transmitted to third parties should not be on the privilege log and should be produced.

(7) Trustee asserts that the privilege log is deficient because it lacks particularity, so nVidia has not met its burden of establishing a privilege.

### B. nVidia's Argument

nVidia opposes Trustee's motion on timeliness and substantive grounds. First, nVidia does not dispute that Pettigrew and Carmichael shared dual roles as business and legal advisors and nVidia reviewed the documents producing those that were primarily business advice and not producing those that were primarily legal advice. Simply because Pettigrew and Carmichael offered business advice to nVidia does not mean that all their com-

munications are no longer privileged. nVidia only has claimed as privilege those documents that are primarily legal advice. Further, Trustee mistakenly believes that because one of Cooley Godward's attorney's attended a meeting of the board of directors, that attorney acted as a business advisor rather than legal counsel and the attorney-client privilege is waived for nVidia's communications with Cooley Godward.

Second, nVidia argues it has not produced privileged documents or had witness testimony that would waive the attorney-client privilege in the alleged areas of (1) the structure of the transaction; (2) the value of the assets; (3) nVidia's lease assumption; and (4) the escrow account. Moreover, if any privilege was waived, the waiver would be limited to the communication disclosed and only with respect to that communication.

Third, nVidia asserts it did not waive its attorney-client privilege regarding the structure of the transaction by disclosing how the deal was structured and the reasoning behind it in the press because the press disclosure did not reveal the actual content or substance of the communication.

Fourth, nVidia contends it did not waive any privilege as to the value of the assets by denying Trustee's allegations that nVidia failed to pay reasonably equivalent value because any privileged communication is not at the heart of determining that issue.

Fifth, nVidia argues its transmission of information to outside counsel does not waive the privilege because a communication between an attorney and a client may be privileged even if the information is not itself privileged. Moreover, Trustee's challenge log fails to show for what documents Trustee asserts waiver argument.

Sixth, nVidia asserts that the documents that were transmitted to third parties are still privileged because the transmission was to nVidia's accountants and consultants in furtherance of the legal aspect of the transaction and maintains the attorney-client privilege.

Finally, nVidia contends its privilege log contains sufficient information to meet the privilege presumption. Further, the work product privilege is governed by federal, not state law. Moreover, Trustee's challenge log is insufficient to overcome the privilege presumption.

## III. DISCUSSION

### A. Timeliness of Motion

Civil Local Rule 26–2, incorporated by Bankruptcy Local Rule 1001–2(37), provides:

Unless otherwise ordered, as used in any order of this Court or in these Local Rules, a "discovery cut-off" is the date by which all responses to written discovery are due and by which all depositions must be concluded.

Where the Court has set a single discovery cut-off for both fact and expert discovery, no motions to compel discovery may be filed more than 7 court days after the discovery cut-off.

Where the Court has set separate deadlines for fact and expert discovery, no motions to compel fact discovery may be filed more than 7 court days after the fact discovery cut-off, and no motions to compel expert discovery may be filed more than 7 court days after the expert discovery cut-off.

Discovery requests that call for responses or depositions after the applicable discovery cut-off are not enforceable, except by order of the Court for good cause shown.

In *Goodworth Holdings Inc. v. Suh*, 239 F.Supp.2d 947 (N.D.Cal.2002), *aff'd*, 99 Fed.Appx. 806 (9th Cir.2004), the district court inferred that a motion to compel could be brought after the 7 court day deadline of Civil Local Rule 26–2. In denying a motion for reconsideration, the district court stated:

> Plaintiff's motion to compel was not denied because the desired evidence was not likely to be helpful to its case—it was denied because it was inexcusably late. As the August 28, 2002 order stated:
>
>> Per Local Rule 26–2, "[n]o motions to compel discovery may be filed more than 10 days after the discovery cut-off." The discovery cut-off in this case was August 2, 2002, pursuant to the Case Management Order of December 6, 2001. Because plaintiff has not provided a viable excuse for this violation, this request is denied.

*Goodworth Holdings*, 239 F.Supp.2d at 966.

■ Trustee finally received a completed privileged log from nVidia on August 10, 2004. The fact discovery cut-off was August 20, 2004. However, the parties agreed to continue depositions of certain fact witnesses after the discovery cut-off and did not seek a court order memorializing this agreement. Some of the evidence used by Trustee in support of this motion to compel is testimony from the post-discovery cut-off depositions. nVidia agreed to stay this litigation pending the mediation efforts shortly after the last post-discovery cut-off deposition was completed. Trustee filed this motion within six weeks of notifying nVidia that he was no longer staying this litigation. Based on nVidia's actions regarding staying the litigation pending mediation efforts, there is a viable excuse that permits Trustee to file the motion to compel after the 7 court day deadline in Civil Local Rule 26–2.

## B. Legal Standard Regarding Waiver of Attorney–Client Privilege

■ Federal Rule of Evidence 501 provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Since this action involves claims and defenses under state law, federal common law does not apply with respect to privilege issues. *KL Group v. Case, Kay & Lynch*, 829 F.2d 909, 918 (9th Cir.1987); *FDIC v. Fidelity & Deposit Co. of Maryland*, 196 F.R.D. 375, 380 (S.D.Cal.2000) (*"FDIC Maryland"*).

■ Generally, communications between a lawyer and client which are intended to be confidential are protected from disclosure. Cal. Evid.Code § 954. Confidential communications include not only information given by a client to his or her attorney but also the attorney's legal opinion and advice given to the client. Cal. Evid.Code § 952.

■ Under California law, the party asserting the attorney-client privilege bears the initial burden of proving that a

communication has been made in confidence during the course of the attorney-client relationship. *FDIC Maryland,* 196 F.R.D. at 380 (citing *State Farm Fire & Casualty Co. v. Superior Court,* 54 Cal. App.4th 625, 639, 62 Cal.Rptr.2d 834 (1997)). Once the party asserting the privilege makes the initial showing, the burden shifts to the party opposing the privilege to show either that the information was not confidential or that it falls within an exception. *Id.*

### C. Legal Standard Regarding Waiver of Work Product

■■ The assertion of work product is not an assertion of an evidentiary privilege, but rather an assertion of a qualified immunity. *Admiral Ins. v. U.S. District Court,* 881 F.2d 1486, 1494 (9th Cir.1989); *FDIC Maryland,* 196 F.R.D. at 381. Thus, federal law, not state law, provides the governing law on the scope and extent of the attorney work-product doctrine. *FDIC Maryland,* 196 F.R.D. at 381.

■ The primary purpose of the work product doctrine is to "prevent exploitation of a party's efforts in preparing for litigation." *Admiral Ins.,* 881 F.2d at 1494. The work-product doctrine requires that "there must be an identifiable prospect of litigation (i.e. specific claims that have already arisen) at the time the documents were prepared." *Fox v. California Sierra Financial Services,* 120 F.R.D. 520, 525 (N.D.Cal.1988). The work-product doctrine is embodied in Rule 26(b)(3). Rule 26(b)(3) provides that under certain circumstances, discovery may be had of documents and things prepared in anticipation of litigation or trial by an attorney. Rule 26(b)(3) provides:

Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Under Rule 26(b)(3), while trial preparation material may be discoverable upon an appropriate showing, the materials containing the mental impressions, conclusions, opinions and legal theories of an attorney are discoverable only in rare and extraordinary circumstances. *Holmgren v. State Farm Mutual Automobile Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992) ("[O]pinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling.") (Emphasis in original).

### D. Adequacy of Privilege Log

■ A party claiming a privilege has the burden of establishing that a particular document is privileged. *San Diego Prof. Assn. v. Superior Court,* 58 Cal.2d 194, 199, 23 Cal.Rptr. 384, 373 P.2d 448 (1962). The information in a privilege log "must be sufficiently specific to allow a determination of whether each withheld document is or is not [in] fact privileged."

*Wellpoint Health Networks, Inc. v. Superior Court,* 59 Cal.App.4th 110, 130, 68 Cal.Rptr.2d 844 (1997).

██ For each document, nVidia's privilege log contains the author, date of preparation, recipients, description and the specific privilege claimed. This is sufficient information under *Wellpoint* and the privilege log presented by nVidia meets the presumption.

### E. Various Alleged Waivers of the Attorney–Client Privilege

#### 1. Attorney Acting as Business Advisor

##### a. In–House Counsel

██ An attorney's communications in the role of a business agent are not privileged. *Chicago Title Ins. Co. v. Superior Court,* 174 Cal.App.3d 1142, 1151, 220 Cal.Rptr. 507 (1985). The privilege only applies when the attorney is performing legal work for the client. *Montebello Rose Co., Inc. v. Agricultural Labor Relations Board,* 119 Cal.App.3d 1, 173 Cal.Rptr. 856 (1981). "To make the communication privileged the dominant purpose must be for transmittal to an attorney 'in the course of professional employment.' The privilege does not apply to communications to an attorney who is transacting business that might have been transacted by another agent who is not an attorney." *Montebello,* 119 Cal.App.3d at 32, 173 Cal.Rptr. 856 (citations omitted). The dominant purpose of the communication must be to secure or render legal service or advice. *Id.* Whether a particular communication is predominantly in furtherance of the attorney-client relationship is a question of fact. *Id.* at 33, 173 Cal.Rptr. 856.

██ "Presumably, in doubtful cases or those in which the legal work and work performed as an agent are inextricably intertwined, the privilege will be sustained." *Wellpoint,* 59 Cal.App.4th at 122, 68 Cal.Rptr.2d 844. The *Wellpoint* court recognized that

> even though an attorney is hired to conduct business affairs, he or she may be called on to give legal advice during the course of the representation, and documents related to those communications should be protected notwithstanding the original purpose of employing the attorney. The trial court should not have given McCombs carte blanche access to Lafayette's investigative file, but should have based its ruling on the subject matter of each document.

*Id.*

██ In this case, nVidia has repeatedly stated in letters to Trustee's counsel, its motion papers and at various depositions that nVidia has permitted discovery where the primary purpose of the document or question was business advice and not permitted discovery if the primary purpose was legal advice. Based on the evidence before the court, the court has no basis to assume that nVidia is acting inconsistent with its representations. Trustee's motion is denied.

##### b. Outside Counsel

██ Trustee argues that outside counsel Cooley Godward attended board of directors meetings and discussed business aspects of the transaction, including concerns that 3dfx would not be able to pay off its creditors and inclusion of an escrow provision in a term sheet. Based on the authorities cited above, attending a board of directors' meeting where business aspect of a transaction were discussed does not, by itself, render outside counsel a business advisor. Trustee's motion is denied on this point as well.

██ Even if the court were to find that the attendance of outside counsel at the meeting was for a business purpose, the

attorney-client privilege may be waived for that meeting, but such waiver would not require the court to assume that all communications with outside counsel on that subject are waived.

## 2. Prior Disclosure of Privileged Communications

. █ California courts have recognized an implied waiver of the attorney-client privilege. *Mitchell v. Superior Court,* 37 Cal.3d 591, 603, 208 Cal.Rptr. 886, 691 P.2d 642 (1984). For implied waiver, "the person or entity seeking to discover privileged information can show waiver by demonstrating that the client has put the otherwise privileged communication directly at issue and that disclosure is essential for a fair adjudication of the action." *Southern California Gas Co. v. Public Utilities Commission,* 50 Cal.3d 31, 40, 265 Cal.Rptr. 801, 784 P.2d 1373 (1990). In *Southern California Gas,* a gas company applied for relief from a gas supply contract and asserted that its request was based in part on the advice of counsel. The Public Utilities Commission sought discovery of the information provided by the attorney to the gas company and the California Supreme Court upheld the attorney-client privilege. The court held that the implied waiver was limited in scope and stated:

> SoCalGas has done nothing in the present proceedings to place in issue its privileged communications. Nowhere in its CAM application or in the proceedings before the commission does SoCalGas state that it intends to rely on its attorneys' advice or state of mind to demonstrate that it acted reasonably when it bought out the Getty contract. It has expressly stated otherwise. Because its attorneys' advice or state of mind is not in issue, it has not impliedly waived its attorney-client privilege.

*Id.* at 42, 265 Cal.Rptr. 801, 784 P.2d 1373 (footnote omitted). The court declined to expand the waiver of the attorney-client privilege as requested by the commission holding that the safeguard of the confidential relationship between clients and their attorneys to promote full and open discussion of facts and tactics was a fundamental purpose of the attorney-client privilege and the court was not going to impinge on that privilege. *Id.* at 45, 265 Cal.Rptr. 801, 784 P.2d 1373.

█ Here Trustee asserts nVidia waived its attorney-client privilege on the areas of: (1) the structure of the transaction; (2) the value of the assets; (3) nVidia's lease assumption; and (4) the escrow account because witnesses have testified and a significant number of documents have been produced on these topics. However, under the authorities of *Southern California Gas* and *Mitchell,* Trustee has not shown that nVidia has put the privileged communication directly at issue and there is no showing that disclosure is essential for a fair adjudication of this matter. Trustee's motion is denied.

## 3. Disclosure of Privileged Communications to the Press

█ Trustee argues that under *City of Los Angeles v. Superior Court,* 170 Cal. App.3d 744, 216 Cal.Rptr. 311 (1985), the fact that an attorney from Cooley Godward discussed the nVidia–3dfx transaction in a press article waived the attorney-client privilege regarding the structure of the transaction. In *City of Los Angeles,* the city sued owners of property for unlawful business practices. Prior to the filing of the lawsuit, several city employees including the city attorney spoke with a reporter from the Los Angeles Times detailing the reasons behind the city attorney not filing a criminal action against the parties sued in the civil action. The city then filed the civil action. The court found that because the city had explained to the reporter why it had not filed a criminal action against

the defendants that the city had waived its attorney-client privilege.

Here the press article quoting Cooley Godward regarding the nVidia–3dfx transaction did not disclose specific contents of conversations with nVidia. The article states that Cooley Godward represented a dozen asset transactions at the time the article was published and the comments of counsel were general comments about the structure of an asset transaction versus a stock-for-stock transaction and did not disclose any confidential communications regarding the nVidia–3dfx transaction. The article also quotes a nVidia spokesperson stating that nVidia only wanted a piece of 3dfx and did not want 3dfx's liabilities. Because the article speaks generally about asset purchases versus a stock-for-stock transaction, the reasoning of *City of Los Angeles* does not apply here and Trustee's motion is denied.

### 4. Value of Assets at Issue

■ Trustee asserts that because nVidia takes the position that it paid reasonably equivalent value for the asset purchased that nVidia waived any privilege as to the value of the assets. However, this is contrary to *Mitchell.* In *Mitchell,* plaintiffs sued defendants over contamination of groundwater. The defendants sought details from one of the plaintiffs about the nature and content of any warning she had received from her attorneys. The California Supreme Court recognized that permitting the exercise of the attorney-client privilege may result in the suppression of relevant evidence, however those concerns were outweighed by the importance of preserving confidentiality in the attorney-client relationship. *Mitchell,* 37 Cal.3d at 599–600, 208 Cal.Rptr. 886, 691 P.2d 642. The court found that simply because the plaintiff had alleged emotional distress was not a reason to find that plaintiff waived the attorney-client privilege. *Id.* at 607–08, 208 Cal.Rptr. 886, 691 P.2d 642.

Here, nVidia is defending against the allegation of fraudulent transfer by asserting that it paid reasonably equivalent value for the assets purchased. This defense does not rise to the level of putting an attorney's communications at issue and Trustee's motion is denied.

### 5. Transmission to Outside Counsel

■ Under *Mitchell,* discovery of the transmission of specific public documents that might reveal the transmitter's intended strategy are covered by the attorney-client privilege. *Mitchell,* 37 Cal.3d at 600, 208 Cal.Rptr. 886, 691 P.2d 642. Trustee asserts that documents transmitted to outside counsel waives the attorney-client privilege. However, the challenge log does not list the documents to which this theory of waiver applies and Trustee's papers cite only one example.

Simply because documents are transmitted to outside counsel does not mean there is not an alternate basis for asserting attorney-client privilege. Because the challenge log fails to specify the documents to which this theory applies, Trustee's motion is denied.

### 6. Documents Delivered to Third Parties

■ The California Evidence Code extends that attorney-client privilege to third parties "who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." Cal. Evid.Code § 952. Under this section, the privilege is not waived when documents provided to third parties necessary to further the interests of the client, especially the accountants and consultants retained by nVidia to assist it in negotiating

and closing the transaction. Trustee objects to documents delivered to the accountants and others hired by nVidia to assist it in the transaction. To the extent the third parties are accountants or consultants, the attorney-client privilege is not waived by the transmission of documents to those persons. Trustee's motion is denied.

## IV. CONCLUSION

The court finds nVidia has not waived the attorney-client privilege or the work-product doctrine under the various grounds asserted in Trustee's motion to compel. Trustee's motion is denied in its entirety.